253 So.2d 744 (1971)
GULF CITIES GAS CORPORATION, Appellant,
v.
TANGELO PARK SERVICE COMPANY, a Corporation, and Florida Gas Company, a Corporation, Appellees.
No. 70-1078.
District Court of Appeal of Florida, Fourth District.
October 27, 1971.
*745 Ernest R. Drosdick, of Lowndes, Peirsol, Drosdick, Baker & Doster, Orlando, for appellant.
Fredric M. Hitt, of Bowden, Hitt & Hurt, Orlando, for appellee, Tangelo Park Service Co.
REED, Chief Judge.
This is an appeal from a final judgment of the Circuit Court for Orange County, Florida. Broadly stated, the issue on this appeal is whether or not the trial court's final judgment correctly applied the terms *746 of a written contract between the plaintiff, Tangelo Park Service Company, and the defendant Fuel Gas Corporation (hereafter called "Fuel Gas").
The plaintiff, Tangelo Park Service Company, filed an amended complaint on 11 October 1968 which alleged that the defendants Fuel Gas and Gulf Cities Gas Corporation (hereafter called "Gulf Cities") breached the contract with plaintiff by failing to pay the plaintiff ten percent of all monies collected for gas sold by said defendants in Tangelo Park, a subdivision in Orange County, Florida, from 1 May 1966. The complaint was later amended to add Florida Gas Company (hereafter called "Florida Gas") as a party defendant based on the allegation that Florida Gas assumed the obligations of the contract. The relief sought was an accounting and a judgment for the asserted indebtedness. The cause was tried without a jury.
In essence the contract purported to give the defendant Fuel Gas the exclusive right to sell gas to residents of Tangelo Park Subdivision for cooking and heating. In return Fuel Gas was obligated to pay Tangelo Park Service Company ten percent of all revenues collected by it arising from such sales. For our purposes the critical provisions of the contract state:
"5:- If a consumer refuses to use a gas range, an electric range may be used but the same shall not be furnished by builder or original seller of the home, or any person acting for builder or original seller. It is further understood that consumers shall not be required to use gas for cooking, water heating, or space heating, but if gas is used for any of the foregoing purposes it shall be gas furnished by SUPPLIER,[*] and the exclusive right to provide such service shall be arranged by SERVICE COMPANY[*] to extend for as long as the law and government authorities will permit. SERVICE COMPANY will arrange for reasonable enforcement provisions, but SUPPLIER shall have the right and duty of enforcing exclusive gas service rights.
* * * * * *
"12:- (a) SUPPLIER WILL pay to TANGELO PARK SERVICE COMPANY not later than fifteen days following the end of each calendar quarter (payment dates  April 15, July 15, October 15, and January 15), an amount equal to ten per cent (10%) of the gross amount received by SUPPLIER, through the sale of gas, from consumers within the Subdivision using the service provided by SUPPLIER." (Emphasis added.)
The defendant Gulf Cities was not a signatory to the contract.
The final judgment recites that the trial court found for the defendants Florida Gas and Fuel Gas on the plaintiff's claim against them, but found for the plaintiff against defendant Gulf Cities on the plaintiff's claim against it. The court further found that the contract terminated on 27 September 1970. The court held: (1) that the plaintiff recover from defendant Gulf Cities $27,704.52 plus interest in the amount of $3,386.36, and (2) that defendant Gulf Cities and Florida Gas account to plaintiff for all monies collected by either defendant from gas sales in Tangelo Park Subdivision through 27 September 1970 and pay over to plaintiff an amount equal to ten percent of the gross income from such sales.
The defendant Gulf Cities filed this appeal and assigned as error the entry of the final judgment and particularly the finding that the contract was terminated on 27 September 1970. The plaintiff, Tangelo Park Service Company, cross-assigned the same finding and also assigned as error the failure of the trial court to order the defendants to perform the payment obligations *747 of the contract "so long as gas is sold in Tangelo Park Subdivision."
The plaintiff, Tangelo Park Service Company, associated with two other corporations in connection with the development of the Tangelo Park Subdivision. The other two corporations were Cross-State Land Company and Cross-State Construction Company. Al Feldman, who appeared as a witness on behalf of the plaintiff, was president of all three of these companies in 1958 when the significant events occurred.
Tangelo Park Service Company was formed for the purpose of providing sewer and gas facilities for the subdivision, but never owned any of the real property in the subdivision. Cross-State Land Company owned the land and transferred the lots to Cross-State Construction for the construction of houses.
Thomas Donovan was vice-president of Cross-State Land, Cross-State Construction, and Tangelo Park Service Company in 1958. The negotiations which gave rise to the contract were initiated by one Archie Deserable in 1958. According to Donovan, Deserable told him that he represented the appellant Gulf Cities. Donovan told Deserable that he (Donovan) wanted, "* * * a contract that would last forever"; a contract for, "* * * as long as gas was being served * * * in Tangelo Park"; and, a "lifetime contract." Deserable, according to Donovan, agreed to this concept. Donovan said that after several meetings with Deserable, the conclusion of the negotiations was left to Al Feldman who is presently the vice-president of plaintiff.
Al Feldman testified that he negotiated the terms of the contract with the principals of defendants Gulf Cities and Fuel Gas. He said that some negotiations were held with a Mr. Birnbaum who represented himself as negotiating for Gulf Cities. Birnbaum, according to Feldman, stated that Fuel Gas was the parent of Gulf Cities, and for image purposes the contract would be in the name of Fuel Gas. With respect to the duration of the contract, Feldman testified, "I think the contract speaks for itself, it was a  forever."
With respect to the performance of the contract, Archie Deserable testified that Gulf Cities  not Fuel Gas  laid the mains, installed the distribution system and paid for it. He said the lines were placed in roadways and easements before houses were sold. Gas service started to the customers in the subdivision in the latter part of 1958, according to Deserable. The gas was piped through the system from a bulk storage plant on lots bought by Gulf Cities from the plaintiff.
At the time the contract was in negotiation, the Cross-State companies were negotiating restrictions with FHA relative to the subdivision. The subdivision restrictions were imposed by Cross-State Land and later Cross-State Construction Company. The first section was restricted on 21 November 1958. Subsequent restrictions were recorded on 31 March 1958 (Section Two); 5 October 1959 (Section Three); 19 February 1960 (Section Four); and 27 September 1960 (Section Five). Each of the restrictions contained a clause to the effect that any gas purchased for use in the homes would be purchased from the subdivider or its successors or assigns for a period of ten years.
A contract dated 19 February 1969 was entered into between the defendant Gulf Cities and the defendant Florida Gas for the sale to Florida Gas of all of Gulf Cities' tangible assets in Tangelo Park as well as whatever easements or property rights it had in the subdivision.
The trial judge sitting without a jury was presented with two basic issues. The first was whether or not the defendant Gulf Cities was liable on the contract between Fuel Gas and the plaintiff, Tangelo Park Service Company, even though Gulf Cities was not a formal party to the contract. The second issue was the extent or measure of that liability, if any. The trial judge held that the defendant Gulf Cities *748 was liable as a party to the contract and ordered it to pay the plaintiff ten percent of all monies collected by either defendant Gulf Cities or Florida Gas from the sale of gas in Tangelo Park through 27 September 1970.
As to the first issue, the trial court's ruling is amply supported by the facts and the law. Where a party acts in such a way as to lead others reasonably to change position on the assumption that the party has adopted another's contract as his own, the party so acting is estopped to disclaim his apparent position as a party to the contract. See Ayala v. Murrell, Fla. 1957, 97 So.2d 13 and Manatee County Growers' Ass'n v. Florida Power & Light Company, 1934, 113 Fla. 449, 152 So. 181. This principle clearly applies to the undisputed facts in this case, and for purposes of this opinion defendant Gulf Cities will be treated as an original party to the contract sued on.
The second issue is more difficult to resolve. It seems to be the appellant's position that it was entitled to terminate the contract, including the obligation to pay the rebate, upon reasonable notice at any time. The appellee's position seems to be that the obligation to pay the rebate was a perpetual obligation and applied to all sales of gas within the subdivision regardless by whom the sales were made or the revenues received.
An analysis of the contract in question reveals that it contains no express contractual duty on the part of defendant Gulf Cities to provide gas to consumers within the subdivision for any specific duration. Nevertheless, the trial court apparently found not only a duty on defendant Gulf Cities to provide gas, but a duty that would endure for a period extending from the date of the contract through 27 September 1970. Having "found" this duty, the trial court held that Gulf Cities' contractual obligation to rebate applied to all gas sold to consumers in the subdivision during that period of time, regardless of who furnished the gas or received the revenues. The trial court's interpretation of the contract as imposing a duty to furnish gas for a specific duration was based on evidence extrinsic to the contract which tended to indicate that at the time the contract was under negotiation, the parties contemplated that the plaintiff would secure to the defendant Gulf Cities or Fuel Gas the exclusive right to sell gas in the subdivision for a period of ten years.
Where the language of a contract is ambiguous or unclear as to a particular right or duty, the court may receive evidence extrinsic to the contract for the purpose of determining the intent of the parties at the time of the contract. Holmes v. Kilgore, 1925, 89 Fla. 194, 103 So. 825; Florida Power Corporation v. City of Tallahassee, 1944, 154 Fla. 638, 18 So.2d 671, 674; Underwood v. Underwood, Fla. 1953, 64 So.2d 281, 288. However, where a contract is simply silent as to a particular matter, that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted. Gendzier v. Bielecki, Fla. 1957, 97 So.2d 604, 608; Azalea Park Utilities v. Knox-Florida Develop. Corp., Fla.App. 1961, 127 So.2d 121; McGhee Interests v. Alexander National Bank, 1931, 102 Fla. 140, 135 So. 545, 547. In our opinion the contract before the court was "silent" as to the duration of the defendant's duty to provide gas to Tangelo Park Subdivision. In that circumstance the normal rule is that the duty is terminable at will. Florida-Georgia Chem. Co. v. National Laboratories, Fla.App. 1963, 153 So.2d 752; Southern Bell Telephone & Telegraph v. F.E.C. Ry. Co., 5 Cir.1968, 399 F.2d 854; Collins v. Pic-Town Water Works, Inc., Fla.App. 1964, 166 So.2d 760. And this rule should have been applied.
*749 We have not overlooked the language in the contract which provides:
"5:- * * * the exclusive right to provide such service shall be arranged by SERVICE COMPANY to extend for as long as the law and government authorities will permit. * * *"
We do not believe, however, that this language implies a duty on defendant's part to furnish gas for a comparable period. We think that the undertaking by the plaintiff expressed in the quoted language was simply the inducement to Gulf Cities to make the expenditures in the subdivision which were necessary to create the gas distribution system.
But the foregoing is not determinative of the issue presented here and in the trial court. For purposes of applying the contract, a clear distinction must be made between Gulf Cities' duty to furnish gas and its duty to rebate to the plaintiff on the revenues from sale of gas in the subdivision. As to the duty to rebate, the contract expresses an intention as to duration and, therefore, the need to rely on presumptions or extrinsic evidence is obviated. Paragraph 12(a) of the contract provides:
"SUPPLIER WILL pay to TANGELO PARK SERVICE COMPANY not later than fifteen days following the end of each calendar quarter, (payment dates  April 15, July 15, October 15, and January 15), an amount equal to ten per cent (10%) of the gross amount received by SUPPLIER, through the sale of gas from consumers within the Subdivision using the service provided by SUPPLIER."
The reference in that paragraph to "service provided by SUPPLIER" refers to the furnishing of gas by the Supplier (Gulf Cities and Fuel Gas). The duty to rebate, according to the plain language of the contract, applies (a) to any monies received by the Supplier (Gulf Cities and Fuel Gas); (b) for gas furnished by it; (c) to consumers in the subdivision (Tangelo Park Sections 1-5)  without regard to when such gas was furnished. The duration of the duty is by necessary implication coextensive with the duration of the activities of the supplier  Gulf Cities  in selling gas and receiving the revenues therefrom. So long as that defendant furnished the gas to customers in the subdivision and received the revenue from such sales, the duty to rebate continued. Compare City of Gainesville v. Board of Control, Fla. 1955, 81 So.2d 514.
Because the obligation to rebate, as expressed in paragraph 12(a) of the contract, does not apply to the proceeds from gas sales where the said defendant neither furnishes the gas nor receives the proceeds, it was error on the part of the trial court to hold defendant Gulf Cities liable to pay ten percent on sales of gas by Florida Gas, in the absence of a showing that Gulf Cities was actually receiving the proceeds of such sales.
What is said above answers Points I and II of the appellant and the cross-assignment by appellee. The other points presented by the appellant's brief have been reviewed. It is our opinion that those points are without merit and do not require discussion.
For the foregoing reasons, the final judgment is reversed and the cause remanded for a redetermination of the issue of the amount of damages only, in accordance with views hereinabove set forth. The trial court may receive such further evidence as it may be advised to accomplish the purpose of the remand.
Reversed and remanded.
OWEN and MAGER, JJ., concur.
NOTES
[*] "SUPPLIER" referred to the defendant Fuel Gas. "SERVICE COMPANY" referred to the plaintiff, Tangelo Park Service Company.