**DISPOSABLE SERVICES, INC.,**
Plaintiff-Appellee,

v.

**ITT LIFE INSURANCE COMPANY OF
NEW YORK, Defendant-Appellant.**

No. 71-2258.

United States Court of Appeals,
Fifth Circuit.

April 13, 1972.

Robert E. Venney, Gunn & Venney, Miami, Fla., for defendant-appellant.

Herbert L. Heiken, Martin Levinson, Miami, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.[1]

GODBOLD, Circuit Judge (dissenting to order denying petition for rehearing):

After considering the petition for rehearing and giving further study to the record, I think the petition should be granted.

The trial judge decided the case for plaintiff on a question of law. We held that he erred and then decided for defendant on another issue of law. I think the record reveals that, after all, what we have is a question of fact for jury determination.

The ultimate concern is whether Britt, the insured, had such knowledge of an impairment to his health as put on him a duty to report it to the insurance company. This brings us face to face with the question of what Britt learned of his condition from Dr. Bryant on February 3, a date which, under any version of the facts, was before the policy became effective. Dr. Bryant testified that at no time did he diagnose Britt as having a kidney stone, that he examined Britt and found him essentially normal except for tenderness over the left kidney, that he thought there was something wrong with the kidney, either an obstruction or infection, and recommended to Britt that he check in to the hospital and find out the cause, and that at some point (the time of which is not fixed) he indicated a "possible" kidney stone.

1. In the motion for rehearing plaintiff complains of our conclusion that deceased, Britt, was advised on February 3, 1970 that a kidney stone was the cause of the pain in his back and that this would require hospitalization for further examination. Petitioner contends that Dr. Bryant's testimony is opposed to the Court's conclusion. No mention is made by petitioner, however, of defendant's Exhibit 2, identified in the record as "Hospital Admission Records of Samuel Britt, South Miami Hospital, on February 5, 1970," which was received in evidence without objection (Tr. 51). One page of the exhibit (stamped page No. 360) shows at the bottom thereof, "DX (L) Kidney Stone, Dr. Bryant," indicating a diagnosis by Dr. Bryant of a left kidney stone. On the page entitled "History" (stamped page No. 322), dated February 5, 1970, information taken from the patient by Dr. Salazar, who is designated as "Physician Taking History" and is one of the resident doctors, the follow-

ing is shown under "PRESENT ILLNESS":

"Pt. states that about nine days ago he started c̄ pain in the back (on the left). It was a sore in the beginning and it increased until being very strong. With heat pad it improved. *Three days ago he saw his doctor and he thought that probably a kidney stone was the cause and he must be admitted.*" (Emphasis supplied.)

This page bears the signature of Dr. Salazar.

When Dr. Bryant testified he was asked about the hospital records and the diagnosis as follows (Tr. 129–130):

"Q. Doctor, we notice in the hospital records in one or two places that there was some reference in the early information taken of a suggestion of kidney stones. Did you ever diagnose this man as having kidney stones?

"A. No. However, when you get an obstruction you have to consider that in the ureter it is one of the most common

An entry on the hospital admission record, made by a resident physician who did not testify, said this:

> Pt. states that about nine days ago he started $\bar{c}$ pain in the back (on the left). It was a sore [sic] in the beginning and it increased until being very strong. With heat pad he improved. Three days ago he saw his doctor and he thought that probably a kidney stone was the cause and he must be admitted.

The entry is ambiguous—whether the second "he" is the doctor or Britt is unclear. In any event, ambiguous or not,

taking both the hospital record and Dr. Bryant's testimony, it is plain that our original opinion was wrong in stating that it was "undisputed" that Dr. Bryant told Britt that he "was suffering from some type of kidney ailment, *probably* a kidney stone." (Emphasis added.)

It is for a jury to consider these post-event efforts to determine just how much Britt really knew on February 3, and, under appropriate instructions, to decide whether that knowledge was sufficient to require him to tell the insurance company about it.

reasons for an obstruction, which would be a kidney stone, and that particular site of his obstruction is one of the most common practices or common places, rather, for a stone to lodge.

"Q. The entry on the hospital records in the preliminary information that it was diagnosed as kidney stones would make some sense to some physicians?

"A. Well, I'm not sure what you are referring to. It depends on where it is. *This is on the admitting sheet when I first admitted him, 'left kidney stone.' That was my admitting diagnosis at that time.*

"Q. I am referring specifically to the document called 'History.'

"A. Oh. All right.

"Q. It says, 'Present illness.'

"A. This was written by one of the house officers, house doctors or residents. What I am referring to is his admitting diagnosis on the first entry, the first admission. It talks about the left kidney stone. The resident frequently goes by the admitting diagnosis.

"Q. In other words, at some point you indicated possible kidney stone; is that it?

"A. Yes. This area is the most likely area because of an obstruction to the kidney." (Emphasis suplied.)

In our view the record (including exhibits as well as testimony) sustains the conclusions we reached in our original opinion, 453 F.2d 218.