364 So.2d 15 (1978)
BOAT TOWN U.S.A., Inc., Stephen Grossman and Albert H. Tate, Jr., Appellants,
v.
MERCURY MARINE DIVISION OF BRUNSWICK CORPORATION, etc., Appellee.
No. 76-1552.
District Court of Appeal of Florida, Fourth District.
October 4, 1978.
Rehearing Denied December 4, 1978.
*16 Donald M. Coon, Miami, for appellants.
Davis W. Duke, Jr., of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for appellee.
CROSS, Judge.
Appellant-counterclaimant, Boat Town U.S.A., Inc., et al., appeals a judgment entered on the pleadings of a counterclaim in favor of appellee-counter-defendants, Mercury Marine Division of Brunswick Corporation, in an action instituted by Mercury seeking to recover sums allegedly owed under a contract for sale of goods. We reverse.
Boat Town U.S.A. is a Florida corporation engaged in the sale of marine products, whose place of business is in Broward County, Florida. Mercury Marine Division of Brunswick Corporation (hereinafter Mercury) is a Delaware corporation with its principal place of business in Fond du Lac, Wisconsin. The relationship between Boat Town and Mercury is evidenced by a written agreement termed "Direct Sales Contract," which made Boat Town a dealer of specified Mercury products. This agreement was made renewable each year by Mercury; the last such agreement was dated September 9, 1974. Prior to September 1975, Mercury, without prior written notice of its intention, refused to renew the agreement. Boat Town then refused to make payments to Mercury for Mercury products previously delivered to Boat Town. Mercury then filed a complaint in the Circuit Court of Broward County, Florida, for sums it claimed were due and owing for Mercury products. Boat Town answered and filed a counterclaim, alleging that the action of Mercury in failing to renew the agreement violated Chapter 135, Wisconsin Statutes, known as the Wisconsin Fair Dealership Law, and this constituted a breach of the agreement. Mercury answered the counterclaim and alleged as an affirmative defense No. 4 that:

*17 "Chapter 135 of the Wisconsin Statutes, ... has no applicability to this cause or to Florida dealers, alleged or actual; nor does that chapter provide any jurisdictional basis for a Florida court, or any court applying Florida law, to grant relief thereunder. All counts and claims of the counterclaim premised thereon should be dismissed with prejudice."
Boat Town then moved to strike Mercury's affirmative defense No. 4, which after hearing was denied by the trial court. Mercury then moved for judgment on the pleadings with respect to certain counts of the counterclaim. The trial court, after hearing, determined as a matter of law that the provisions of Chapter 135, Wisconsin Statutes, known as the "Wisconsin Fair Dealership Law" are inapplicable to a dealer located in Florida and therefore were inapplicable in the instant cause. Judgment for the appellee-counter-defendant was accordingly entered. This appeal then followed.
As its initial point, appellant asserts that Mercury and Boat Town expressly selected the law of Wisconsin to govern their agreement.
Paragraph II of the Direct Sales Agreement provides:
"II. INTERPRETATION. This Agreement and all its provisions are to be interpreted and construed according to the laws of the State of Wisconsin. Any provision of this contract which in any wise contravenes or is unenforceable under any law of the nation of the state or states in which this agreement is effective shall be deemed separable and not to be part of this agreement."
Appellant urges us to the view that the above quoted provision reflects the intention of the parties to be bound by Wisconsin law not only in the interpretation and construction of the terms of the contract itself, but also as to the substantive rights and obligations of the parties themselves. Appellant cites C.A. Marine Supply Co. v. Brunswick Corp., No. C76-132A (N.D.Ga. 1976), aff'd (5th Cir.1977), in support of its position. In C.A. Marine the trial judge for the federal district court, in construing the identical provision in a contract between parties other than those here before us now, determined that the quoted language did provide for the express selection of Wisconsin law to govern the entire legal relationship of the parties. With all due regard for the views of the learned trial judge, we must respectfully decline from that view.
It is the law in Florida that the language used in a contract is the best evidence of the intent and meaning of the parties. Home Devel. Co. v. Bursani, 178 So.2d 113 (Fla. 1965). As was recognized in the C.A. Marine case, a distinction exists between the words "interpretation" and "govern." Interpretation is defined as "[t]he art or process of discovering and expounding the meaning of a ... written document." Black's Law Dictionary, 4th ed. 1968. On the other hand, govern means "to direct and control the actions or conduct of, either by established law or by arbitrary will; to direct and control, rule, or regulate, by authority." Black's, id. The difference between "interpretation" and "govern" is more than a technical distinction. It goes to the very heart of the purpose underlying a contract. The terms of a contract generally govern the conduct of the parties. It is the purpose of interpretation to ascertain what those terms are. However, it is settled law in Florida that a court may resort to the process of interpretation only when the words used in a contract are unclear. Board of Public Instruction of Dade County v. Fred Howland, Inc., 243 So.2d 221 (Fla.3d DCA 1971). The ambiguity must exist on the face of the document itself before extrinsic matters may be considered by the court. Gulf Cities Gas Corp. v. Tangelo Park Service Company, 253 So.2d 744 (Fla.4th DCA 1971).
In the instant case, there is no assertion, nor could any be substantiated, that ambiguities exist in the terms of the contract. Thus, the interpretation clause of the contract has no effect and does not provide an explicit choice of Wisconsin law to govern the conduct of the parties.
*18 The mere fact that the parties have not made an explicit choice of law does not, however, prevent the application of Wisconsin law in the instant case. While it is true that a statute generally has no effect of its own force beyond the territorial limits of the state in which it was enacted, (see Equitable Life Assur. Soc. v. McRee, 75 Fla. 257, 78 So. 22 (1918)), such law may be applied in a foreign forum under conflict of law principles. The extent to which rights arising under the laws of one state will be given legal effect within the dominion of another is dependent upon the degree of recognition purposely given to those rights by the forum state, having due regard both to its duty under recognized notions of comity and convenience, and in full contemplation of the rights of its own citizens or other persons who are under the protection of its law. Absent a stipulation as to which state's law is applicable in a multi-state transaction, it is well established in Florida that matters bearing on execution, validity, interpretation and obligations of contracts are determined by the lex loci contractus, whereas matters connected with performance are regulated by the lex loci solutionis. Brown v. Case, 80 Fla. 703, 86 So. 684 (1920); State-Wide Insurance Company v. Flaks, 233 So.2d 400 (Fla.3d DCA 1970); Charles L. Bowman & Company v. Erwin, 468 F.2d 1293 (5th Cir.1972); Center Chemical Company v. Avril, Inc., 392 F.2d 289 (5th Cir.1968). Where the place of making and of performance of a contract are the same, the law of that state determines and controls the validity, interpretation, and rights and obligations under the contract. Confederation Life Association v. Ugalde, 151 So.2d 315 (Fla.3d DCA 1963), aff'd in part, rev'd in part, 164 So.2d 1 (Fla.), on remand 163 So.2d 343 (Fla.3d DCA), cert. denied 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186.
In the instant case, both the place of making and of performance are located in Wisconsin. The contract was entered into at Fond du Lac, Wisconsin, the situs of Mercury Marine Division's principal offices. Although it is true that the terms of the contract called for performance in both Wisconsin and Florida, we determine that the most significant acts under the Direct Sales Agreement were those which related to the sale of goods occurring in Wisconsin, and other acts under the agreement, although performed in Florida, were merely ancillary to the main purpose of the contract. All shipments were made f.o.b. seller's factory at Fond du Lac, Wisconsin; all pricing and credit decisions were undertaken in Wisconsin; orders were not final until accepted in writing by Mercury in Wisconsin; title to all goods was transferred from Mercury to Boat Town in Wisconsin, thereby shifting the risk of loss to Boat Town in Wisconsin; the dealer was under an obligation to submit a certified financial statement each year at Mercury's principal office; and, no modification or renewal of the agreement could occur without the signature of the general sales manager or other officer of Mercury in Wisconsin. The pleadings and contract attached thereto clearly indicate that the parties' place of performance, as well as the place of contracting, was Wisconsin, and therefore, we determine that Wisconsin law is applicable in the instant cause.
Furthermore, no reason has been offered as to why the present forum should not apply the Wisconsin law. It seems apparent that Wisconsin, in adopting the Fair Dealership Law, had significant interests in controlling dealership arrangements, not only from the point of view of protecting the interests of the dealer himself, but also in regulating the conduct of the supplier to prevent overreaching. It was the determination of the Wisconsin legislature that its citizens should not engage in the type of conduct proscribed in the Fair Dealership Law. Florida should not take it upon herself to countermand this determination by the State of Wisconsin, absent some compelling reason to do so.
In the present case, Florida is seized with no compelling interest which would dictate that a rule of law other than the Wisconsin Fair Dealership Law be applied. In fact, the Wisconsin law serves to protect the best interests of a Florida resident while controlling *19 the conduct, as is appropriate, of a Wisconsin resident. No actual conflict between the interests of the two respective states exists because the best interests of both states are served by an application of the Wisconsin Fair Dealership Law.
Accordingly, the order of the trial court is reversed and the cause remanded for further proceedings consistent with the views expressed herein.
Reversed and remanded.
LETTS, J., concurs.
MOORE, J., dissents with opinion.
MOORE, Judge, dissenting:
I respectfully dissent. In my opinion, the order from which this appeal stems is a non-appealable order. A motion to dismiss on this ground was previously denied by the Court at a time when the record was insufficient to make an appropriate determination. Mendez v. West Flagler Family Association, Inc., 303 So.2d 1 (Fla. 1974).