RYDER, Judge.
Martin Juster, the plaintiff below, appeals a final judgment entered in favor of Montgomery Ward, et al., based upon the construction of a contract regarding common area maintenance charges in a shopping mall. We reverse.
On October 1, 1971, Montgomery Ward Development Corporation entered into an agreement entitled “Reciprocal Construction, Operating and Easement Agreement” (hereafter RCOE) with Floriland, Inc. The parties owned contiguous parcels of land in the mall. The RCOE provided that an enclosed pedestrian mall would be constructed and that Ward Development would contribute payments to Floriland for its maintenance.
In June of 1973, Ward Development transferred ownership to Sixth Mont Limited Partnership. Sixth Mont then leased the property to Montgomery Ward & Company (hereafter Ward).
On June 16,1980, Juster purchased Flori-land’s interest in the property. Until that time, Floriland had accepted the maintenance payments as calculated by Ward.
At the end of one full year of operation of the mall by Juster, Juster’s accountant came to the conclusion that Ward had not *852 been paying the full amount which they owed under the RCOE. Juster filed suit against Ward Development, Sixth Mont and Ward to recover damages for underpayments for charges related to common area maintenance of the mall.
Paragraph 3.2 of the RCOE sets forth the method of calculation for “Common Area Maintenance Contributions.” The pertinent provisions of this, paragraph read as follows:
[T]he Owner of Parcel B shall pay or cause to be paid to the Owner of Parcel A (herein called “Maintenance Payment’), a share equal to its Gross Leaseable Proportion of the cost of lighting, heating, adequately insuring, air conditioning and maintaining the enclosed pedestrian mall, upon receipt of a monthly statement from the Owner of Parcel A. Notwithstanding the foregoing, such Maintenance Payment shall not exceed, during the first five (5) years of the term of this Agreement, the sum of Ten Cents ($.10) multiplied by the gross floor area of all buildings on Parcel B excluding the TBA and Outside Sales Area. In addition to the Maintenance Payment, from and after the fifth (5th) year of the terms of this Agreement the Owner of Parcel B shall pay or cause to be paid an additional payment computed on the following basis: In the event that the “Consumer Price Index” ... (hereinafter called the “Price Index”) reflects an increase in the cost of living over such costs as reflected by such Price Index as it exists on January 1, (hereinafter called the “Base Date”), the Owner of Parcel B shall pay or cause to be paid to the Owner of Parcel A, in addition to the Maintenance Payment, an amount (herein called “Additional Maintenance Payment”) determined by multiplying the Gross Leasea-ble Proportion then payable by a fraction the numerator of which is the difference between the Price Index as it exists on the Base Date and the Price Index as it exists on the first day of the month immediately preceding the commencement of each applicable computation period, and the denominator of which is the Price Index as it exists on the Base Date. Such computation shall be made on the first day of the sixth (6th) year of the term of this Agreement and on each quinquennium anniversary thereafter during the term of this Agreement. The computation on each quinquennium anniversary shall determine the amount of the Additional Maintenance Payment for the next five (5) years immediately following the computation date until the next quinquennium anniversary computation date. Any request for the Maintenance Payment and any Additional Maintenance Payment shall be accompanied by satisfactory evidence of the cost of the operation.... The Owner of Parcel A shall keep accurate books and records of accounts covering such operation, which books and records of accounts may be audited by the Owner of Parcel B or' its authorized representatives, to verify the same....
Juster’s position at trial was that paragraph 3.2 of the RCOE required Ward to pay common area maintenance contributions limited by the sum of $.10 per square foot of the gross leaseable space in the store for the first five years. From then on, Ward owed a common area maintenance contribution which consisted of: (1) a maintenance payment equal to Ward’s pro rata share of the actual cost of operating the enclosed pedestrian mall; and (2) an additional maintenance payment based upon a consumer price index calculation.
Ward argued that the $.10 per square foot limitation applied not only during the first five years, but also beyond that time and limited the amount of the first component of the common area maintenance contribution to a fixed amount. Juster claimed this amount was unrelated to and less than Ward’s fair share of the actual cost of operating the mall. Ward also argued that the “additional maintenance payment” was to be calculated by multiplying a percentage based upon a consumer price index calculation times the maintenance payment “then payable.” The term “then payable” referred to the amount payable *853 on the last day of the fifth year of the term and the last day of each subsequent five-year period. Juster argued the amount “then payable” should be the amount due on the first day of the sixth year of the agreement. The trial court found that there were conflicting interpretations of paragraph 3.2, that the contract was ambiguous, and permitted the introduction of parol evidence.
After carefully reviewing the pertinent provisions of paragraph 3.2 of the RCOE, we find limiting language which plainly and unambiguously provided that the $.10 limitation on the Maintenance Payment applied only during the first five years of the agreement. Moreover, the contract clearly contemplated that the consumer price index was to be calculated against the maintenance payment which was owing on the first day of the sixth year. Because there is no latent ambiguity, the trial court should not have allowed the introduction of parol testimony to further explain the intent of the parties. Boat Town U.S.A., Inc., v. Mercury Marine Division of Brunswick Corp., 364 So.2d 15, 17 (Fla. 4th DCA 1978); J.C. Penney Co., Inc. v. Koff, 345 So.2d 732, 735-36 (Fla. 4th DCA 1977). As we hold there exists no ambiguity in the contract, we reverse and remand the matter to the trial court with instructions to enter final judgment in favor of Juster in accordance with the plain terms of the contract.
Reversed and remanded with instructions.
GRIMES, A.C.J., and HALL, J., concur.