104 So.2d 792 (1958)
PENINSULAR LIFE INSURANCE COMPANY, a corporation under the laws of the State of Florida, Appellant,
v.
Elsie P. ROSIN, Appellee.
No. 251.
District Court of Appeal of Florida. Second District.
August 1, 1958.
Rehearing Denied September 16, 1958.
*793 Milam, LeMaistre, Ramsay & Martin, Wayne K. Ramsay, Jacksonville, Clyde H. Wilson, Sarasota, for appellant.
Rosin & Paderewski, P.T. Paderewski, Dart & Bell, Francis C. Dart, Sarasota, for appellee.
ALLEN, Acting Chief Judge.
This is an appeal from a final decree in a suit for declaratory relief. The plaintiff had sued Peninsular Life Insurance Company, a corporation, to have determined the effect of a conditional receipt given by the defendant company to plaintiff's deceased husband in connection with an application by the husband for life insurance. The decree determined that such receipt constituted interim life insurance upon the life of plaintiff's husband from the date of a certain physical examination and adjudged plaintiff, as beneficiary, to be entitled to the proceeds of such interim insurance as the result of her husband's accidental death. From this decree the defendant appeals.
The amended complaint alleged several grounds for relief, but the plaintiff, in the lower court, abandoned all grounds except the one on which the court below granted relief. Therefore, the sole question in this case is whether the conditional receipt given by the defendant insurance company constituted interim insurance.
The appendix to the appellee's brief included the application for insurance. There is some dispute as to whether this application was properly before the lower court. Since it does not affect our decision in this case, we shall comment on the application as though it were properly before the court. The application is on a typical insurance form and includes reference to the type of insurance, occupation, beneficiary, amounts, etc. The last paragraph of the application contains these words:
"I warrant that my answers to the foregoing questions are correct and true and binding upon me; I authorize any physician at any time to give you information he may be possessed of regarding me; I agree that the insurance hereby applied for shall not take effect until issued by the company and delivered to me and accepted by me and the first full premium paid during my good health, except as provided for in the conditional receipt for advance payment of the first premium."
The conditional receipt involved herein is as follows:
"(Valid only for the amount of the advance settlement shown in application under Section 4, Page 1)
 "No. 11779 12-26-52
"Received from Marcus Aurel Rosin (Applicant) the sum of ____ $85.00 ____ dollars, being payment on account of policy applied for in the Peninsular Life Insurance Company, of Jacksonville, Florida. It is understood that if this payment is equal to the full first annual, semi-annual, quarterly, or monthly premium according *794 to the mode of premium payment selected by the applicant in making application for this policy the insurance shall take effect from the date of the application, or date of medical examination if an examination is required by the Company, whichever is the later, provided said application is approved and accepted at the Home Office of the Company at Jacksonville, Florida, for the plan, premium paid, and amount of insurance applied for, and further provided that the maximum liability of the Company including double indemnity benefits shall not exceed $25,000 if the applicant is between the ages of 10 and 50 inclusive and $15,000 at any other age. It is agreed that said Company will return the amount mentioned herein if it declines to grant a policy on the life of said applicant, or if it issues a policy other than as applied for which is not accepted by the applicant. Unless you receive a policy within six weeks from the date of this receipt, please notify the Company, giving the name of the person to whom paid and the amount and date of payment.
 "District 23 Debit 8 F.R. Freeman
 "(Agent)"
The complaint alleged that the insurance was applied for on December 26, 1952, that the application and the first quarterly premium of $85 was taken by defendant's local agent, and that the deceased successfully passed the second of the two physicals required by defendant on January 13, 1953, thereby completing the application, that the defendant's home office had the complete application and premium on January 16, 1953, and that applicant Rosin was killed on January 20, 1953.
The chancellor's decree construed the conditional receipt as constituting interim insurance in the amount of $25,000 and ordered that amount paid to plaintiff, as beneficiary, plus interest, attorneys' fees in the amount of $7,500 and costs.
The question involved is one of first impression in Florida, although it has been passed upon by several other jurisdictions. We consider the question to be:
"Where the conditional receipt provided that the company would incur no liability unless the application be approved and accepted at the home office of the company for the plan, premium paid, and amount of insurance applied for, and said application was not approved or accepted, did the instrument provide for interim insurance prior to such acceptance by the home office?"
Many cases involving conditional insurance, interim insurance, or other types of insurance receipts have been decided by the courts upon the basis of estoppel, ambiguity of the policy, laches or other theories, none of which, we believe, are involved in this case.
It will be observed that the first sentence in the conditional receipt contains this parenthetical statement: "(Valid only for the amount of the advance settlement shown in application under Section 4, Page 1)". The paragraph relating to advance settlement, above referred to, is as follows:
"Premiums payable annually, semi-annually, quarterly or monthly? Q Advance settlement $85.00"
which sum of money was tendered to the plaintiff and refused.
The following is found in Florida Jurisprudence:
"Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms used by the parties. If they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. * * *" 18 Fla.Jur. Insurance § 92.
"The general principle that a written agreement should, in case of ambiguity, be construed against the party who *795 drew the contract or chose the language used, is particularly applicable to contracts of insurance. As it is the insurer who furnishes and prepares the policies, this rule is of considerable importance in construing policies. The general rule is that terms in an insurance policy, that are ambiguous, equivocal, or uncertain to the extent that the intention of the parties is not clear and cannot clearly be ascertained by the application of ordinary rules of construction, are to be construed strictly and most strongly against the insurer, and liberally in favor of the insured, so as to effect the dominant purpose of indemnity or payment to the insured, especially where a forfeiture is involved, since the forfeiture of insurance policies is not favored by the courts. * * *" 18 Fla.Jur. Insurance § 94.
"The rule that insurance policies should be strictly construed to avoid forfeitures and to favor the insured does not apply where the language used in the policy is so plain and unambiguous as to leave no room for construction. If the language used is clear and unambiguous, it will of course be given its natural meaning. The court should not extend strictness in construction to the point of adding a meaning to language that is clear.
"Again, the rule does not apply where the result would be a construction that the insured could not have intended." 18 Fla.Jur. Insurance § 95.
The Florida Supreme Court, in Gulf Life Insurance Co. v. Ellis, 1940, 145 Fla. 262, 198 So. 836, held that, where an application for a life insurance policy provided that insurance should not take effect until the policy was delivered to insured while in good health and free from injury, and the policy provided that it should not take effect unless on date of delivery thereof insured was alive and in sound health, the policy did not take effect and recovery could not be had thereunder where policy was dated December 19 and was at insurer's branch office for delivery on that date, but was not delivered because insured had died on the previous day since terms of contract were plain and unambiguous. The Court, in its opinion, said:
"The terms of the contract were plain and unambiguous and since the insured was not alive and in good health on the effective date of the policy as its terms require, we have reached the conclusion that it never took effect and recovery cannot be had thereunder. It is certainly not an unreasonable requirement that the insured be alive and in good health on the date of the delivery of the policy. * * *"
It will be observed in the above case that the policy had issued and had been sent to its agent for delivery but was not delivered because the insured had died on the previous day. In the case now before this court no policy had issued nor had the application been approved and accepted at the home office of the company as required by the conditional receipt.
The variety of the forms of applications, receipts and the wording of the policies has led to numerous decisions by the courts of this nation. The multiplicity of the questions that arise from the different types of contracts may be ascertained from the exhaustive annotations on Temporary Insurance appearing in 2 A.L.R.2d, Pages 943 to 1022, inclusive.
In the case of Colorado Life Co. v. Teague, Tex.Civ.App. 1938, 117 S.W.2d 849, 855, the Court said:
"We are not dealing with what is generally known as a `conditional receipt' or what is less frequently called a `conditional binding receipt.' Commonly there is found in this type of receipt, and in some instances duplicated in the application, a provision to the effect that the insurance shall be considered *796 as in force from the date of the receipt, or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Of course, such an instrument is ineffectual to provide protection to the applicant until the application is approved or rejected."
In the case of the Mutual Life Insurance Company of New York v. Young's Adm'r, 1875, 23 Wall. 85, 23 L.Ed. 152, the U.S. Supreme Court said:
"The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained. There was a necessary implication that if it were accepted the response and acceptance were to be by a policy, in conformity with the terms specified in the receipt as far as they extended, and beyond that, in the usual form of such instruments as issued by the company. But it was clearly within the power of the company, under the condition expressed, wholly to reject the application, without giving any reason; or to accept the proposition with such modifications of the terms specified, and of the usual conditions of such policies, as it might see fit to prescribe. The entire subject was both affirmatively and negatively within its choice and discretion."
The Court of Appeals of Georgia, in Kammerer v. Metropolitan Life Insurance Company, 1957, 95 Ga. App. 609, 98 S.E.2d 391, 393, said:
"`Where, in consideration of a payment made to an insurance company of a certain stipulated amount of money as a premium for life insurance, the company agrees that upon the approval at the home office of the application for the issuance of the policy, the company will, in the event of the death of the person to be insured and prior to the issuance of the policy pay to the beneficiary the amount of the insurance which would have been due had the policy been issued, there arises no contract of insurance in the absence of an approval of the application at the home office.' Hill v. Life & Casualty Ins. Co., 51 Ga. App. 578 (1), 181 S.E. 104. In such circumstances, the application must be approved before the conditional receipt constitutes a temporary policy of insurance, and, so long as the application is not acted upon, no contract of insurance is consummated. Paulk v. State Mutual Life Ins. Co., 85 Ga. App. 413, 69 S.E.2d 777. Where the receipt is a binder conditioned upon approval of the application by the company at its home office, the insurer becomes obligated upon acceptance and approval of the application. * * * The uncontradicted evidence in this case being, that, while the application was being processed, and before approval or rejection, the applicant died and the company thereafter refused to approve the policy, the plaintiff failed to carry the burden of proving that the application had been `approved at the company's home office within 30 days' as required by the terms of the binder in cases where the full premium is paid in."
In the case of Southwestern Life Insurance Company v. Evans, Tex.Civ.App. 1953, 262 S.W.2d 512, 516, the Court said:
"It is plain from the wording of the application and conditional receipt that the advance payment of the premium would be accepted in payment of the first premium only if the application should be approved by the company at its home office. No such approval is shown by this record. The acceptance, endorsement, and deposit of the check by the company did not in any way constitute an approval of Mr. Evans' application."
See also Green v. Equitable Life Assurance Society of the United States, 1955, 3 *797 Utah 2d 375, 284 P.2d 695; Hayes v. Durham Life Insurance Company, 1957, 198 Va. 670, 96 S.E.2d 109; and Killpack et al. v. National Old Line Insurance Company, 10 Cir.1956, 229 F.2d 851.
In the case of Bellak v. United Home Life Ins. Co., 6 Cir., 1957, 244 F.2d 623, 624, the Court said:
"However, this court held that it was bound by the decision of the Supreme Court of Michigan in Smiley v. Prudential Ins. Co., 321 Mich. 60, 32 N.W.2d 48, where it was determined that where an application for insurance had been made with payment of the first premium and death had occurred before the issuance of the policy, the provision in the application requiring it to be approved by the Home Office before the insurance was effective, was controlling, and that, since the application had not been so approved at the time of the applicant's death, there was no valid contract of insurance and no interim insurance in effect at the time of his death."
We have read and studied the case of Prudential Insurance Co. of America v. Prescott et al., 1933, 115 Fla. 365, 156 So. 109, cited by the appellee, and do not construe this case as being contrary to our holding herein. The question involved in that case was an incontestability clause and the date when that period arose.
We are of the opinion that the conditional receipt given in this case, to-wit:
"* * * the insurance shall take effect from the date of the application, or date of medical examination if an examination is required by the Company, whichever is the later, provided said application is approved and accepted at the Home Office of the Company at Jacksonville, Florida, * *"
is clear and unambiguous and that no contract took effect until such approval.
It is well known that insurance companies take many factors into consideration before issuing large contracts of insurance, such as the moral like of the applicant, his habits, amount of insurance carried, and many other factors, on which the medical examination has no bearing, and these factors are reserved by the company for independent investigation before the contract is accepted.
This case must be reversed and remanded to the lower court to enter judgment in favor of the defendant, appellant herein.
Reversed.
SHANNON, J., and MORROW, R.O., Associate Judge, concur.