116 So.2d 798 (1960)
Elsie P. ROSIN and Simon Rosin, As Executors of the Estate of Marcus Aurel Rosin, Deceased, Appellants,
v.
PENINSULAR LIFE INSURANCE COMPANY, a Florida Corporation, Appellee.
No. 1263.
District Court of Appeal of Florida. Second District.
January 6, 1960.
*799 Harvey J. Abel, Joseph B. Cramer, Rosin & Paderewski, Sarasota, for appellants.
Clyde H. Wilson, Sarasota, and Wayne K. Ramsay; Milam, LeMaistre, Ramsay & Martin, Jacksonville, for appellee.
ALLEN, Chief Judge.
This action at law was instituted by the appellants, as plaintiffs in the lower court, in 1953 and is a companion case to Peninsular Life Insurance Company v. Rosin, Fla.App. 1958, 104 So.2d 792, and involves substantially the same parties and factual situation. The above reported case was filed on the same day as the instant suit and was filed by Elsie P. Rosin in her individual capacity as the named beneficiary in the application for insurance. Whereas in the instant suit, the plaintiffs are Elsie P. Rosin and Simon Rosin, Executors of the Estate of Marcus A. Rosin. Both cases originally sought similar relief but at the final hearing in the previous case the equitable grounds of relief were abandoned and the issue was limited to the construction of the application for insurance and the conditional receipt made a part thereof.
Following the decision of this court in the prior reported case, the present plaintiffs revived the instant action at law with their repleader of bill of complaint and an amendment thereto. This complaint alleged that on December 26, 1952, decedent Marcus Rosin signed a written application for a ten year term life insurance policy with appellee-defendant. The policy was in the face amount of $20,000 and provided for double indemnity in the event of death by accident. The decedent paid the defendant $85, the first annual premium and in return the decedent received from defendant a document entitled "Conditional Receipt." The complaint further alleged that defendant's agent in Sarasota reported to defendant on December 26, 1952, that decedent Rosin "was a desirable risk in all respects"; that defendant received the above applications and payment on December 31, 1952; that decedent submitted to two physical examinations at defendant's request on January 13, 1953, which found decedent in good health; and that defendant received all of these reports on January 16, 1953.
*800 The decedent was killed in an automobile accident on January 20, 1953, and immediately thereafter the defendant was notified. Upon being presented with a claim under this insurance policy, the defendant denied liability, and tendered back the premium which was refused by the beneficiary. The plaintiffs concluded the complaint with an allegation that defendant was guilty of fraud thereby damaging plaintiffs in the amount of $40,000.
The defendant filed an answer to the above complaint alleging that no action was customarily taken on policies such as this until all of the medical reports are received in the home office; that the reports were not forwarded in this case until January 15, 1953; that the reports were received in the home office on Friday, January 16, 1953, and that during its normal course of procedure the application could not have been processed by the date of decedent's death on January 20, 1953; and that, in fact, other applications received on the same date were not processed until as late as March 30, 1953. The defendant also set up its failure to issue an actual policy of insurance to decedent as a defense.
The plaintiffs then filed an amendment to the repleader bill of complaint which deleted paragraph 18 of the repleader bill of complaint and substituted in lieu thereof the following:
"18. That on and prior to December 26, 1952 said Marcus Aurel Rosin was desirous of additional insurance of the type and in the amount referred to herein and on December 26, 1952, made application to the defendant as above set forth for such policy. At the time said application was so made and the above quoted receipt was issued the defendant through its agent Forrest Freeman represented to said Rosin that if he, the said Rosin, successfully passed a medical examination an insurance policy would be issued of the type and in the amount above referred to, which said representation was made by the defendant through its agent Forrest Freeman for the purpose of inducing the said Rosin to make application for said insurance, pay the initial premium and submit to a medical examination. That the defendant, at the time said representation was made to the said Rosin, knew that the same was not true and knew that it would not issue such an insurance policy regardless of the receipt of the initial premium and of the said Rosin successfully passing the medical examination. Said Rosin believed said representation to be true and in reliance thereon made said application, paid the initial premium, secured the receipt above referred to and submitted himself to medical examination which he successfully passed. That he and his estate, in view of the facts hereinabove alleged that the defendant knew it would not issue such policy and some time after the death of said Rosin did undertake to disapprove and refuse to issue said policy, was injured thereby as were the plaintiffs herein and, among other things, said Rosin from the time of the application to said defendant for such policy until the date of his death did forego the right and opportunity which he had to make application to another insurance company for a policy of like type and like amount. That therein and thereby defendant was guilty of fraud and negligence upon the decedent and said decedent and the plaintiffs herein have been damaged in the sum of $40,000.00."
The defendant answered denying all allegations of the amended answer. The defendant then filed a motion for summary judgment; a motion for a repleader; a motion to strike, and a motion to dismiss. After argument by both sides the lower court entered an order on February 27, 1959, dismissing the complaint and since plaintiff did not desire to plead further, the court entered a final judgment in favor of defendant. The final order stated that the *801 complaint failed to state a cause of action against the defendant; that the complaint failed to state a cause of action that survived the decedent or could be brought by his personal representatives; and that the pleadings do not warrant recovery on estoppel, fraud, delay, or any other theory under which the complaint may have been drafted.
The question of whether an insurance company is under a duty to act upon an application for insurance within a reasonable time and that violation of this duty, with resultant damages, subjects the company to liability for negligence has not been passed upon by the Supreme Court of this State.
Insurance is a contract, which like other contracts, results only from an offer and an acceptance of the offer. There is a conflict in the authorities as to whether legal obligations arise only after a contract of insurance has been made, or whether in certain circumstances a legal duty arises, from the relationship created during the negotiations between an applicant for insurance and the insurance company, to act promptly upon the application, and to inform the applicant whether the offer is accepted or rejected. There are essentially two main lines of decisions dealing with these questions. One line of decisions holds that the legal relations between an applicant and the insurance company are fundamentally the same as those between parties in any contractual negotiations; that delay or inaction by an insurance company in accepting or rejecting an application does not constitute an acceptance or establish the relationship of insurer and insured; and that such delay or inaction does not constitute any breach of duty by the insurance company. Rather than take up space with numerous citations, the reader is referred to a comprehensive annotation on this question in 32 A.L.R.2d pages 487-539, and the cases cited and summarized therein.
The other line of decisions holds that an insurance company that has solicited and received a completed application for insurance is under a legal duty to take prompt action on the application, and give prompt notice to the applicant of its action; and that such insurance company is liable in tort for negligent delay in acting upon the application, and notifying the applicant in case the application is rejected. Annotation 32 A.L.R.2d 487. This liability of an insurer in tort for negligent delay appears to have originated in an opinion of the Supreme Court of Hawaii in 1897, reported as Carter v. Manhattan Life Ins. Co., 11 Hawaii 69. This theory was then expressed as a basis for holding an insurer liable in tort for negligent delay in acting upon an application for insurance in Boyer v. State Farmers' Mut. Hail Ins. Co., 1912, 86 Kan. 442, 121 P. 329, 40 L.R.A.,N.S., 164.
This innovation in the fields of tort and contract law was firmly established the following year in the leading case of Duffie v. Bankers' Life Ass'n, 1913, 160 Iowa 19, 139 N.W. 1087, 1090, 46 L.R.A., N.S., 25. In that case the applicant was in sound health and otherwise an acceptable risk. He had paid the first premium and done all other things required of him before issuance of the policy. The application was negligently mislaid by the insurer's agent and not forwarded until the accidental death of the applicant some thirty days after the date of the application. An action in tort was brought by the applicant's widow, suing as beneficiary designated in the application, and alleging that by the negligence of the insurer she had been deprived of the insurance policy that would otherwise have been issued in due course. As administratrix she also filed a petition of intervention. The lower court directed a verdict for the defendant in both proceedings. In the Supreme Court of Iowa the judgment was affirmed as to plaintiff's claim as beneficiary, but reversed as to her petition as administratrix. The Court wrote a well reasoned opinion setting forth the reasons for holding an insurer to be under a duty to act promptly in accepting or rejecting an application for insurance. In addition, the court stated in regard to who *802 was the proper party to bring this type action:
"The application named plaintiff as his beneficiary, and, had the certificate issued, likely she would have been named therein as such. But there was no contract, and the negligence, if any, was that of failing to discharge a duty owing the deceased. Had the certificate issued, whether plaintiff or someone else were beneficiary would have been optional with the insured, and as the injury, if any, was to him, his representative alone can maintain the action for resulting damages. See Schmidt v. Northern Life Association, 112 Iowa 41, 83 N.W. 800, 51 L.R.A. 141, 84 Am.St.Rep. 323."
The author of Vance on Insurance, Third Edition, states beginning on page 230:
"For many years after the Duffie case was decided most courts considering the question elected to follow that decision. Admittedly the Duffie case represented a departure from accepted legal principles in that tort liability was imposed for negligent delay in acting on an offer where it had been thought that the insurance company owed no legal duty to act promptly or, for that matter, no duty to act at all."
After reviewing two cases that flatly rejected the holding of the Duffie case, the author of the text states citing numerous decisions in support thereof:
"* * * the definite trend of decisions has been against the imposition of tort liability for negligent delay in acting on an insurance application. Many courts have repudiated the Duffie case and only a few courts have, since 1931, followed the Duffie case where they had not already been committed to the doctrine."
It is noted that in states permitting recovery, since the liability imposed on the insurance company is based on tort and not contract it is generally held that any right of action vests in the applicant or his personal representative and not in the proposed beneficiary. Stray v. Western States Life Ins. Co., 1931, 163 Wash. 329, 300 P. 1046, 75 A.L.R. 950; Duffie v. Bankers Life Ass'n, supra; De Ford v. New York Life Ins. Co., 1924, 75 Colo. 146, 224 P. 1049; Veser v. Guardian Life Ins. Co., 1932, 44 Ohio App. 293, 185 N.E. 565; Smith v. Minnesota Mutual Life Ins. Co., 1948, 86 Cal. App.2d 581, 195 P.2d 457; see also cases cited in Annotation 32 A.L.R.2d 487-539, at page 537.
While there is authority permitting the beneficiary named in the application to recover for negligent delay, in some of these cases the question whether the beneficiary was the proper party does not appear to have been raised. See American Life Ins. Co. of Alabama v. Hutcheson, 6 Cir., 1940, 109 F.2d 424 (contract action); Weaver v. West Coast Life Ins. Co., 1935, 99 Mont. 296, 42 P.2d 729. The better reasoned view would appear to be that, if it be admitted that negligent delay on the part of the insurer is a tort, a right of action accrues to the applicant just as soon as a reasonable time for action by the insurer has elapsed, for he has then been deprived of a valuable chose in action besides being lulled into a false sense of security. His subsequent death does not create the right of action, but merely enhances the damages. Vance on Insurance, supra; see also Smith v. Minnesota Mutual Life Ins. Co., 1948, 86 Cal. App.2d 581, 195 P.2d 457; Kling v. Torello, 1913, 87 Conn. 301, 87 A. 987, 46 L.R.A.,N.S., 930; Broughel v. Southern New England Telephone Co., 1901, 73 Conn. 614, 48 A. 751, 84 Am.St. Rep. 176; Smith's Adm'x v. Middleton, 1902, 112 Ky. 588, 66 S.W. 388, 56 L.R.A. 484, 99 Am.St.Rep. 308. It was pointed out in Columbian National Life Insurance Co. v. Lemmons, 1924, 96 Okla. 228, 222 P. 255, by the Supreme Court of Oklahoma that an action for negligent delay in acting upon an application for life insurance survived at common law as well as under a survival statute. The reasoning was that once *803 the applicant has performed all duties under the application, submitted to the physical examinations, and tendered the first premium along with the application to the insurer or his agent, there arises in the insurer a quasi-contractual obligation to the applicant to accept or reject the application within a reasonable time. The Court stated in this regard at 222 P. 257:
"* * * we may concede that the cause of action herein is founded in tort, and still we are of the opinion that it would survive at common law, and therefore, would survive under section 822, Comp.Okl.Stat. 1921. Under the common-law rule, where a cause of action is founded in tort, unconnected with contract, and affects the person only, and not the estate, the action dies with the person; but, where the action is founded on contract, although nominally laid in tort, the action survives."
The applicable rule to survival of actions in Florida as stated in section 45.11 Florida Statutes 1957, F.S.A., is as follows:
"No action for personal injuries and no other action shall die with the person, and all actions shall survive and may be instituted, maintained, prosecuted and defended in the name of the personal representative of the deceased, or in the name of such other person as may be provided by law." (Emphasis added.)
It has long been settled that the question of whether an action survives depends upon the nature of the action and not upon the form of it. Accordingly we are of the opinion that the wrong, if any, for negligent delay in acting upon an insurance application is to the applicant and the property and rights of property affected are merely incidental thereto. Thus upon the death of the applicant, any suit for damages as a result of this alleged wrong should be brought, if at all, by the personal representative and not by the intended beneficiary listed in the application. Consequently we hold that the present plaintiffs, as personal representatives of the deceased, were the proper parties to bring the present action.
The allegations of the complaint as to negligence, together with the facts, when considered along with the numerous factors an insurer must consider when passing upon an application such as the one in the instant case, do not appear to this court to state sufficient grounds for actionable relief. While we recognize that the existence of negligence and the determination of what constitutes a "reasonable time" are generally for determination as questions of fact by a jury, we are nevertheless of the opinion that under the precise facts and circumstances of this case a finding of negligence based upon an unreasonable delay would not be legally supportable. We are, therefore, not required to determine, or to express it more lucidly, to declare the law of Florida which would be applicable if a factual basis for such finding existed. The Florida Courts do not appear to have passed upon this question and, since we find from this record an insurmountable bar to any recovery by the present plaintiffs, a discussion of the legal merits of this type claim could only be academic. We therefore refrain and place our affirmance of the trial court's dismissal of the complaint on the reasons above assigned.
The allegations of the complaint relating to fraud were not argued extensively either in the briefs or before this court nor do we find the allegations in the complaint pertaining thereto sufficient to give rise to such a cause of action.
Counsel for appellee argued in their briefs and before this court matters which were filed in the lower court by way of affidavits in support of appellee's motion for summary judgment. Inasmuch as this cause is before this court on the sole issue of the propriety of the final order dismissing plaintiff's complaint, we are limited *804 in our review to the allegations of the complaint and the motion directed thereto.
After a careful review of the record, briefs, and applicable legal principles, and for reasons assigned herein, we hold that the order of the lower court should be and is affirmed.
Affirmed.
KANNER and SHANNON, JJ., concur.