503 So.2d 376 (1987)
INDEPENDENT LIFE AND ACCIDENT INSURANCE COMPANY, Appellant,
v.
Gladys McKENZIE and Phillip McKenzie, Appellees.
No. BM-229.
District Court of Appeal of Florida, First District.
February 16, 1987.
Rehearing Denied March 24, 1987.
*377 Paul P. Sanford, of Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for appellant.
Daniel W. Dobbins, of Eubanks, Dobbins & Barrett, Tallahassee, for appellees.
WIGGINTON, Judge.
This appeal is from a final judgment in favor of Gladys and Phillip McKenzie adjudging their entitlement to the proceeds of a life insurance policy. We affirm.
Appellant, Independent Life and Accident Insurance Company, challenged the award by the trial court on the several bases that: the premium receipt did not create an insurance contract; the representations of appellant's agent did not estop it from denying coverage; and Independent Life was not negligent in failing to obtain the deceased's signature on the application for insurance prior to his death.
On August 8, 1983, two Independent Life agents visited Phillip and Gladys McKenzie in their Wakulla County home to discuss life insurance. At the time of the visit, the lives of Gladys and two of her adult children, Tammy Free and Randy Raker, were insured by another company, the National Standard Life Insurance Company. Phillip could not qualify for a National Standard policy due to disability. Upon discovering that Independent Life could issue Phillip a policy, the McKenzies determined to cancel the National Standard policies, including Raker's, and replace them with Independent Life policies.
The McKenzies each completed and signed applications for insurance. Free and Raker were not present at the meeting, but the agents filled out applications for them using information obtained from the National Standard policies. Phillip then paid the agents $39.23 cash for one month's coverage and was given a "Receipt for Application," which stated that the money was received "as payment on application for insurance on Phillip McKenzie and Gladys McKenzie" and also provided:
This receipt is issued for deposit on application for insurance. The policy will be considered in force from the date of the receipt and the company will assume all liability under the terms of the policy contract... .
Neither Free's nor Raker's name appears on the receipt, although the evidence at trial showed that $39.23 exceeded the monthly premium due for Gladys and Phillip alone, and Independent Life admitted that the amount was "probably for all four policies." Despite the premium payment, the McKenzies concede that they were made aware at the time that Free and Raker would not be covered until their signatures were obtained on the applications. The agents repeatedly assured them, however, that they would locate the children (Free lived near her parents in Wakulla County; Raker was residing with another sister in Tallahassee) and obtain their signatures. Gladys' offer to get Raker's signature herself was rejected.
The agents contacted Tammy Free the next day and she signed her application. However, Raker was not located, and the evidence tended to show that the agents made no effort to do so. Twenty-eight days after the August meeting, on September *378 5, 1983, Raker was killed in an automobile accident in Leon County. Independent refused to pay on the policy since the application had never been signed. Although Raker's National Standard policy had been cancelled in favor of the Independent Life policy, Raker's death occurred within the 30-day grace period following that cancellation and National Standard paid full triple-indemnity benefits of $7,500.
On February 23, 1984, the McKenzies filed a complaint seeking a declaration of entitlement to the $10,000 proceeds of Raker's policy. Independent Life answered in April, denying the existence of a policy on Raker, and moved for summary judgment on the same ground in July; the motion was denied in April 1985. In January 1986, the McKenzies filed a trial brief, arguing entitlement to the proceeds due either to the agent's negligent delay in obtaining Raker's signature on the application or on the theory that the agent's assurances that the signature would be obtained estopped the company to deny coverage. Independent Life countered with its own brief, arguing that any policy obtained without Raker's consent was against public policy and void; that a 28-day delay in locating Raker was not unreasonable and therefore not negligent, and that estoppel was not available to create insurance coverage.
Following a November 1985 bench trial, the court entered a final judgment that Independent Life had "wrongfully withheld payment of the policy proceeds" to the McKenzies. No ground for this determination was specified.
Although we do not agree that appellees should prevail on either the contract or estoppel arguments espoused by them before the lower court, the evidence and circumstances surrounding this business transaction is sufficient to support a finding of negligent delay. Florida law requires that an individual contracting for insurance on the life of another have an "insurable interest" in that life. Lopez v. Life Insurance Company of America, 406 So.2d 1155 (Fla. 4th DCA 1981), aff'd sub nom. Life Insurance Company of Georgia v. Lopez, 443 So.2d 947 (Fla. 1983). An insurable interest may be predicated upon any relation such as warrants the conclusion that the person claiming the interest has an interest, arising from natural affection, in the life of the insured. 30 Fla. Jur.2d Insurance § 486. It was undisputed that the McKenzies had such an interest in Raker's life, so that they could make application for a policy covering him and be entitled to any benefits and rights provided therein.
The insurer has a duty to the "applicant" for a policy of life insurance to either accept or reject that application within a reasonable length of time after receiving the application and accepting the initial premium. Huberman v. John Hancock Mutual Life Insurance Company, 492 So.2d 416, 418 (Fla. 4th DCA 1986). The breach of this duty can create liability in tort for negligent delay. Rosin v. Peninsular Life Insurance Company, 116 So.2d 798 (Fla. 2d DCA 1960).
In our case, the "applicant" was not the potential insured but individuals with an insurable interest in the life of the insured. In such a situation, a permissible applicant, while he can pay the premium, cannot complete the application with the insured's signature so as to give rise to the duty contemplated by Huberman and Rosin. However, it must nonetheless reasonably follow that when an agent undertakes to obtain the insured's signature, a comparable duty to the actual applicant arises to do so expeditiously or to timely notify of one's inability to do so.
The evidence unmistakably shows that no effort had been made toward obtaining Raker's signature prior to his death. Under these specific circumstances, the company's agents acted negligently in failing either to obtain the signature of the insured or to inform the applicants of the impossibility of doing so. The final judgment is affirmed.
WENTWORTH and NIMMONS, JJ., concur.