WEBSTER, Judge.
Liberty Mutual Insurance Company (Liberty Mutual) seeks review of an order entered by a judge of compensation claims, which order held that a policy of workers’ compensation insurance issued by Liberty Mutual to Joseph J. Scalise, as employer, extended coverage to Scalise, os an employee, for injuries sustained while pursuing his occupation as a carpet installer. We conclude that the policy did not cover Scalise as an employee and, therefore, reverse.
For a number of years prior to 1989, Scalise had been a carpet installer, principally as an independent contractor. In June 1989, he entered into a 1-year “Contract for Installation Services” with Sears, Roebuck and Co., pursuant to which he agreed to install carpet and vinyl flooring materials, as an independent contractor. The contract required Scalise to “employ sufficient competent adult workers to complete each job promptly and satisfactorily.” The contract also required Scalise to maintain comprehensive liability, motor vehicle liability, employer’s liability and workers’ compensation insurance. According to Scalise, he was told that either he could get his own workers’ compensation policy, or Sears would obtain coverage for him and deduct the cost from his remuneration.
Scalise elected to obtain his own workers’ compensation policy. Accordingly, he went to Thomas H. Putnam, an independent insurance broker who had no affiliation of any nature whatsoever with Liberty Mutual. Scalise testified that he went to Putnam because Putnam was “[his] broker who handle[d] all [his] car insurance and whatever insurance [he had]”; and because he had “done business with [Putnam] for years.”
Scalise testified that he told Putnam, “I need a Workers’ Comp policy on myself.” He said that he and Putnam sat down, and that Putnam asked him what he did for a living; how much he earned per week; and whether he had any employees working for him. Scalise told Putnam that he was a carpet installer; that he earned about $1,000.00 per week; and that he had no employees. Putnam then “looked up something called a rate, [and] told [Scalise] it was eight hundred some odd dollars for the year.” Scalise responded, “that’s fine,” whereupon Putnam “filled out a whole bunch of papers, slid them over to [Scalise], said sign, [Scalise] signed them and that was it.” Scalise did not read the application before he signed it. (According to Scalise, he is dyslectic, and has “a hard time with paperwork.”)
Putnam testified that he had no independent recollection of having arranged for workers’ compensation insurance for Scalise. However, he said that he had reviewed his file on Scalise and it contained an application for workers’ compensation insurance. Putnam said that he had apparently filled out the application, because it had his handwriting on it. He testified that he had a vague recollection that Scalise told him that he needed workers’ compensation insurance to satisfy a general contractor, which he believed might have been Sears. Upon reviewing the application, Putnam testified that the application revealed that Scalise had not elected coverage for himself; the application reflected that it covered only “employees, if he had any, and that is what it was supposed to cover.” He also testified that the applica *89 tion reflected that Scalise had no employees.[1] Putnam said that the application was submitted to “the Florida Workers Comp Assigned Risk Plan” because, as far as he was aware, “there is no one ... willing to write voluntarily a workers compensation policy for an employer with no employees.” The minimum premium for contractors was charged because of the nature of the coverage requested.
The application filled out by Putnam represented that Scalise was a “sole proprietor,” and that his business was “installation of carpet.” On the line provided for “name of employer,” Putnam had written “Joseph Scalise.” In response to the question, “Has there been previous workers compensation coverage in Florida?,” Putnam responded, “No.” He also indicated that this was “New Business.” In response to a request for the “name, title, duties and approximate annual salary of officers, sole proprietors or partners,” Putnam wrote “[Name] Joseph Sealise[;] [Title] Owner[;] [Duties] General^] [Approximate Annual Salary] 80 000.”
The application asked, “[i]f a partnership or proprietorship, have the partners or proprietors elected coverage? ... If yes, attach a copy of the election form which has been filed with Department of Labor and Employment Security.” The response was “No,” and no “election form” was attached. Immediately following this question was the explanation, “Partners and sole proprietors are not automatically covered under the Law. If they desire to be covered, they must complete an election of coverage form in duplicate. The payroll for partners or sole proprietors is not to be included in the premium calculations unless they have chosen to be covered under the policy.” The application also asked, “Has the corporation officers [sic ], partners [sic ] or sole proprietors [sic ] payroll been included in determining the estimated annual premium? ... If any executive officers, partners or sole proprietors are to be covered under the policy, then this question should be answered yes.” The answer to this question was, likewise, “No.” Scalise signed below the following representation: “The • undersigned employer hereby certifies that he has read and understands the statements in this application. Furthermore, in consideration of the issuance of the policy of insurance, he also certifies that the statements in this application are true.... ” The application was dated June 5, 1989, and requested coverage for one year.
Putnam mailed the application to the “Florida Assigned Risk Rating Program.” There, the application was assigned to Liberty Mutual. Liberty Mutual issued the policy requested by the application, effective as of June 13, 1989, for a 1-year period. The annual premium was $500.00, the minimum allowed.
On December 11, 1989, Scalise sustained a work-related injury to his right wrist and arm. Initially, he did not seek workers’ compensation benefits. Instead, he submitted his medical bills to his wife’s health insurer, which paid them. Eventually, however, Scalise did file a claim for benefits with Liberty Mutual. Sometime around the beginning of April 1990, Liberty Mutual accepted the claim, and began to pay benefits.[2]
*90 In early November 1990, Liberty Mutual filed and served a Notice of Denial with regard to all benefits on the ground that Scalise had not elected coverage for himself, as an employee of his sole proprietorship,' when he applied for insurance; and that, as a result, the policy which was issued in response to the application did not provide coverage to Scalise as an employee of his sole proprietorship. Subsequently, Scalise filed a claim, seeking temporary total or temporary partial disability, or wage loss, benefits from November 1, 1990, to the present, and continuing; authorization for, and payment of, all necessary medical care; penalties; interest; costs; and attorney fees. Among the defenses raised by Liberty Mutual was the contention that Scalise was not covered as an employee by the policy it had issued, because he had not requested coverage as an employee on the application he had submitted.
The judge of compensation claims bifurcated the ease, hearing only the coverage issue, pursuant to a stipulation between the parties. He eventually entered an order in which he concluded that, even though the application did not elect such coverage and the policy did not extend such coverage, Scalise was, nevertheless, covered as an employee. His conclusion was based exclusively upon the following analysis: In 1982, Scalise had obtained workers’ compensation insurance, as a sole proprietor, from another carrier. At that time, Scalise had filed a “Notice of Election of Coverage Under Workmen’s Compensation Law” with the Division of Labor of the Department of Labor and Employment Security, pursuant to Section 440.05(2), Florida Statutes (1981).[3] Scalise had never filed a notice revoking that election. Because Section 440.05 contained no “time limit or period of expiration for ... a Notice of Election,” the judge concluded that Scalise’s Notice of Election remained in effect, although Scalise had not had workers’ compensation insurance as a sole proprietor since 1982. That Notice of Election, filed in 1982, was, according to the judge, sufficient to bring Scalise “under his workers’ compensation policy [with Liberty Mutual] as an employee pursuant to the provisions of Section 440.05, Florida Statutes” (emphasis added). It is from this order that Liberty Mutual appeals.
Scalise’s application for workers’ compensation insurance clearly evidences an intent on Scalise’s part to decline coverage as an employee. The “No” response to the question, “If a partnership or proprietorship, have the partners or proprietors elected coverage?,” cannot be read to mean anything else. Moreover, everything else about the application is consistent with such an intent: No Notice of Election form was attached to the application, despite the direction to do so if coverage was being elected; and Scalise’s salary was not included in the premium calculations, even though the application clearly states that it must be if coverage is elected. Equally important is the quite material misrepresentation that Scalise had never before had workers’ compensation insurance in Florida, which would have suggested (quite logically) to Liberty Mutual that there was no need to check with the Division of Labor to determine whether Scalise had ever before filed a Notice of Election.
Scalise concedes that there are numerous inaccuracies and misrepresentations in the application. However, his position is that he intended to purchase workers’ compensation covering himself as both an employer and an employee. According to his attorney, “[unfortunately the agent [Putnam] dropped the ball entirely ... to the extent where the agent even filled in information that was totally false.” Scalise’s attorney conceded below that there was no “agency relation *91 ship” of any type between Putnam and Liberty Mutual. Nevertheless, he argues that the decision below is correct because a Notice of Election had been filed some seven years earlier, when a different carrier was involved. The only logical conclusion that one can draw from this argument is that the application is irrelevant to the outcome of the coverage issue.
On the facts of this case, there can be no dispute about the propositions that Putnam was an independent insurance broker; and that, as such, he was acting as Scalise’s agent for the purpose of procuring workers’ compensation insurance. See AMI Ins. Agency v. Elie, 394 So.2d 1061, 1062 (Fla. 3d DCA 1981) (“Under the general rule, ... an insurance broker is the agent of the insured in matters connected with the procurement of insurance”). Accord Auto-Owners Ins. Co. v. Yates, 368 So.2d 634 (Fla. 2d DCA), cert. denied, 378 So.2d 351 (Fla.1979). See generally 16 John A. Appleman & Jean Ap-pleman, Insurance Law and Practice §§ 8722-30 (1981). “An insured is bound by his broker’s acts, even though fraudulent, and is charged with such broker’s knowledge, and cannot challenge the validity of the contract which the broker makes for him. Consequently, a misrepresentation or breach of warranty by such broker is, in law, the act of the insured....” Appleman, supra, § 8728, at 348 — 49. Accordingly, as a matter of law, Scalise is bound by the representations made by Putnam, on Scalise’s behalf, in the application.
According to general principles of both contract and insurance law, in the absence of express provisions to the contrary, the application of one seeking insurance constitutes an offer, and a legally enforceable contract is created upon acceptance of the application by the insurance company. See Hartford Ins. Co. of the Midwest v. Surrency, 537 So.2d 208 (Fla. 5th DCA 1989) (generally, an insurance policy becomes effective when the application is received and accepted by the insur-anee company). On the facts of this case, the application prepared by Putnam on behalf of Scalise was accepted by Liberty Mutual when it issued its policy of insurance. At that point, a valid and binding contract came into being, based upon the terms requested by the application. That Scalise might have subjectively intended to enter into a contract different from that reflected by the terms of the application is, of course, legally irrelevant.
We are of the opinion that the judge of compensation claims erred when he declined to hold Scalise to the terms of the contract which resulted from his application. We find it unnecessary to decide whether or not, as a general matter, a Notice of Election of Coverage filed some seven years earlier, when a different carrier was involved, would be sufficient to put a later insurer on constructive notice that a sole proprietor intended to elect coverage as an employee,[4] In this case, the application clearly does not elect coverage for Scalise, as an employee. In addition, the policy does not purport to cover Scalise, as an employee. These facts, coupled with the material misrepresentation in the application to the effect that Scalise had never before had workers’ compensation coverage in Florida, are, we believe, sufficient to excuse any obligation which Liberty Mutual might otherwise have had to inquire of the Division of Labor as to whether Scalise had ever previously filed a Notice of Election. To reach any other conclusion would, we believe, violate the most fundamental principles of equity. It would also be contrary to basic rules of contract law.
Accordingly, we hold that the workers’ compensation policy issued by Liberty Mutual to Scalise did not provide coverage to Scalise as an employee of his sole proprietorship. Therefore, we reverse the decision of the judge of compensation claims. In doing so, we point out that, to the extent that Scalise has a complaint regarding the trans *92 action which has been the focus of this opinion, the appropriate target of such a complaint would appear to be his insurance broker, Putnam. See Gauty v. Peninsular Fire Ins. Co., 407 So.2d 1093 (Fla. 3d DCA 1982) (affirming judgment against insurance broker who negligently failed to procure workers’ compensation coverage for plaintiff, as an employee of his partnership).
REVERSED.
ZEHMER, C.J., and SMITH, J., concur.

. Although one might question why an employer . who had no employees would purchase workers’ compensation insurance covering employees he did not then have, but not himself, this is apparently not as unusual as it might seem. See, e.g., Fidelity & Casualty Co. of New York v. Northeast Drywall Co., 487 So.2d 42 (Fla. 1st DCA 1986); Boyd-Scarp Enterprises, Inc. v. Saunders, 453 So.2d 161 (Fla. 1st DCA 1984). One explanation for such a practice, offered by counsel for Liberty Mutual below, is that general contractors require subcontractors to obtain workers' compensation insurance covering the subcontractors' employees (or prospective employees), as a condition of the subcontract, so that the general contractor will be protected from the application of Section 440.10, Florida Statutes, which would otherwise make the general contractor liable for the payment of workers' compensation benefits to the subcontractors' employees. However, a subcontractor who is a partner in a partnership, or a sole proprietor, will frequently decline coverage for himself in an effort to keep his cost of workers' compensation insurance as low as possible. By doing so, he also precludes the possibility that, under Section 440.10, he might be considered a “statutory employee” of the general contractor. See, e.g., Boyd-Scarp Enterprises, supra; Vallina v. Victor Fuego Construction Co., 443 So.2d 320 (Fla. 1st DCA 1983).

. The judge of compensation claims found that the fact that Liberty Mutual initially accepted the claim and paid benefits did not preclude Liberty *90 Mutual from subsequently challenging coverage, because the evidence was insufficient to establish the elements necessary for an estoppel. We agree. See generally Azarian v. Azarian, 166 So.2d 442 (Fla.1964); Key v. Goley, 402 So.2d 80 (Fla. 1st DCA 1981).

. Section 440.05(2), Florida Statutes (1981), reads:
Every sole proprietor or partner who elects to be included in the definition of "employee” or who, after such election, then revokes that election shall mail to the [D]ivision [of Labor] in Tallahassee notice to such effect, in accordance with a form to be prescribed by the [Division.
The language of this subsection has not been changed since 1981.

. However, we note that previous decisions of this court appear to suggest, in dicta, that the application must reflect that a partnership or sole proprietor employer is requesting coverage as an employee, as well as an employer; and that a Notice of Election must have been filed with the Division of Labor, indicating an intent to elect such coverage under the policy. See, e.g., Fidelity & Casualty Co. of New York v. Northeast Drywall Co., 487 So.2d 42 (Fla. 1st DCA 1986); Key v. Goley, 402 So.2d 80 (Fla. 1st DCA 1981).