MONACO, J.
 

 The appellant, Karen Campbell, appeals the final summary judgment rendered in favor of the appellee, Household Life Insurance Company (“HLIC”), determining that an application for credit life insurance completed by Mrs. Campbell and her now deceased husband, Danny R. Campbell, was not ambiguous and had never been accepted by HLIC. Because we agree with the trial court that the insurance documentation was not ambiguous and that no insurance contract was created prior to Mr. Campbell’s death, we affirm.
 

 The facts are not in dispute. Mr. and Mrs. Campbell refinanced the mortgage on their home through Beneficial Florida, Inc. Simultaneously, the couple applied for optional credit life insurance through HLIC as offered to them by the lender. In order to do so Mr. and Mrs. Campbell executed and submitted an application for credit life insurance and a disclosure form.,
 

 The Credit Insurance Disclosure provided to the Campbells for execution contained disclosures required by Florida law, and stated that “you understand that credit insurance coverage may be deferred if, at the time of application you are unable to perform normal activities of a person(s) of like age or sex, if the proposed credit insurance policy contains this restriction.” It further provided that “[a]ny credit in
 
 *774
 
 surance you buy will be effective on your Loan Date shown above, unless coverage is added after the date of your Loan.” The couple also executed an authorization to debit account which allowed Fort Knox National Bank to deduct premium payments directly from the Campbells’ checking account. The fixed monthly insurance premium payment was not financed, but was to be included in the Campbells’ monthly loan payments.
 

 The Credit Insurance Disclosure also contained the following language on the signature page:
 

 You acknowledge that: (1) your purchase of credit insurance is completely voluntary, (2)
 
 there will be no insurance until the insurer has approved your application (if one is required),
 
 (3) if the amount of your regular monthly loan payment changes and is less than the amount of your disability benefit, you direct the excess of the disability benefit to be paid to us to reduce your indebtedness, (4) you have reviewed and met the above eligibility requirements for the coverage(s) elected, and (5) you have read and received a copy of this Optional Credit Insurance Disclosure.
 

 (Emphasis added).
 

 In seeking to obtain the subject insurance Mr. and Mrs. Campbell were required, as well, to complete and submit a document entitled an “Application For Credit Life Insurance.” The application asked for the couple’s height, weight, age, occupation and health diagnoses, and other basic information. Additionally, the application authorized the couple’s medical providers to release medical records to HLIC or its reinsurers “so that [HLIC] can determine [the couple’s] eligibility for insurance.” Mr. Campbell indicated that he was 46 years of age, was a very large man, and suffered from high blood pressure and diabetes. Mrs. Campbell indicated that she was 42 years of age, was also a large person, and likewise suffered from diabetes.
 

 Unfortunately, Mr. Campbell passed away a few days after the application was submitted and before a certificate of insurance was issued. When Mrs. Campbell made a claim with HLIC for the life insurance benefits on the life of her husband, she was informed that the couple’s application for coverage had been rejected. In a letter dated subsequent to the death of Mr. Campbell but addressed to him, HLIC stated that it declined Mr. Campbell’s application for Credit Life Insurance based on the information both borrowers supplied on the application form, as well as any additional medical information received during its underwriting review of the couple. The letter indicated that the Campbells would be refunded the full amount of the premium collected for the declined coverage. Mrs. Campbell received another letter further explaining that the Campbells’ application for credit life insurance had been denied because the couple’s height, weight and history of high blood pressure and diabetes did not fall within the insurer’s underwriting guidelines governing acceptability for the insurance product for which the Campbells had applied.
 

 Mrs. Campbell thereafter filed a declaratory action asking the trial court to determine the rights and duties of the parties under the Mortgage Insurance Policy. She asked the trial court to find that Beneficial and HLIC wrongfully refused to hon- or the credit life insurance policy and that the rejection letter was not timely. She further asked the court to find that the return of the couple’s premium payment was not effective to cancel coverage and was done in bad faith to avoid payment of a legitimate claim.
 

 
 *775
 
 Eventually, HLIC moved for summary judgment arguing that there was no genuine issue of material fact regarding HLIC’s denial of the Campbells’ credit life insurance application, as HLIC was under no duty to approve the Campbells’ application, and Mrs. Campbell could not point to any legally actionable wrongdoing on the part of HLIC. After a hearing on HLIC’s motion, the trial court concluded that the application plainly stated that the underwriters could determine the eligibility of applicants for insurance, and that there was no ambiguity in the application. The trial court granted HLIC’s motion for summary judgment. This timely appeal followed.
 

 The standard of review for summary judgments is
 
 de novo. FCCI Ins. Co. v. Home,
 
 890 So.2d 1141, 1142 (Fla. 5th DCA 2004). Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). Here, those requirements are met.
 

 As a general rule, in the absence of express provisions to the contrary, the application of one seeking insurance only constitutes an offer, and a legally enforceable contract is not created until the insurer accepts the offer.
 
 Liberty Mut. Ins. Co. v. Scalise,
 
 627 So.2d 87, 91 (Fla. 1st DCA 1993) (citing
 
 Hartford Ins. Co. of the Midwest v. Surrency,
 
 537 So.2d 208 (Fla. 5th DCA 1989) (explaining that an insurance policy takes effect when the insurance company receives an application and it is accepted)). The application itself is not a contract between parties. As with all other contracts, an insurance contract requires an offer and an acceptance. The application in the present case, as its language makes unambiguously clear, is not a contract; it is no more than an offer to contract for insurance that sets forth the terms that the insurer can either accept or reject.
 
 See Life Ins. Co. of North Am. v. Cichowlas,
 
 659 So.2d 1333, 1335 (Fla. 4th DCA) (J. Warner, concurring specially),
 
 review denied,
 
 666 So.2d 142 (Fla.1995);
 
 Rosin v. Peninsular Life Ins. Co.,
 
 116 So.2d 798 (Fla. 2d DCA 1960).
 

 Moreover, the statutes that expressly govern credit life insurance suggest that the insurer must first accept the application for insurance before coverage is afforded. Sections 627.681(4) and (5), Florida Statutes (2010), say in pertinent part:
 

 (4) All credit insurance sold
 
 shall be evidenced by a policy, certificate, or statement of insurance,
 
 which shall be delivered to the insured borrower or purchaser. Upon
 
 acceptance of the insurance by the insurer
 
 and within 60 days of the date upon which the indebtedness is incurred, the insurer shall cause the individual policy or group certificates of insurance to be delivered to the debtor....
 

 (5) If the named insurer does not accept the risk and coverage is accepted by another insurer....
 

 (Emphasis supplied).
 

 In the instant case, the application plainly shows that the Campbells were not in good health at the time they submitted their application. Aside from their weight issues, they both suffered from diabetes, and Mr. Campbell suffered from high blood pressure. Additionally, there is no allegation that an HLIC agent told either of them that their insurance was effective on the date they applied. On the contrary, the Disclosure signed by Mr. and Mrs. Campbell expressly states that there would be no coverage until the application was approved. A policy may take effect on a specified date even though the contract may be subject to acceptance of an application.
 
 See Gulf Life Ins. Co. v. Ellis,
 
 145 Fla. 262, 198 So. 836 (Fla.1940);
 
 Sur
 
 
 *776
 

 rency,
 
 537 So.2d at 208;
 
 Suarez v. Southland Life Ins. Co.,
 
 158 So.2d 536 (Fla. 2d DCA 1963); 1A Couch on Ins. § 14:2 (A “policy is effective from the date stated, not from the date on which the premium is paid, in the absence of any mistake as to the date or of an agreement between the parties to the contrary. The date of the policy is not conclusive for the parties may agree ... that the policy be antedated and take effect from that date, ... or make the effective date dependent upon fulfillment of one or more stipulated conditions.... ”).
 

 As the trial judge properly concluded, HLIC did not approve the application of the Campbells before Mr. Campbell’s death, and there is no language in the Disclosure that would suggest that insurance coverage became effective at any time before approval of the application.
 
 [1]
 
 Thus, we find no error in the grant of the summary judgment in favor of HLIC.
 

 We have considered the other issues raised by the appellant, but conclude that they need not be addressed in view of our disposition of this case. Accordingly, we affirm the judgment.
 

 AFFIRMED.
 

 TORPY, J., and PERKINS, T. R„ Associate Judge, concur.
 

 [1]
 

 . Mrs. Campbell argues that HLIC had no choice but to issue a policy to her husband and her based, in part, on language found in
 
 National Life Ins. Co. v. Harriott,
 
 268 So.2d 397 (Fla. 2nd DCA 1972). That is to say, Mrs. Campbell posits that the carrier was required to issue the policy as soon as it was applied for.
 
 Haniott
 
 is distinguishable in several respects. First,
 
 Harriott
 
 only stands for the proposition that a purchaser of credit life insurance may not intentionally conceal a terminal illness from the insurer in acquiring the insurance. Second, it involves a case where a policy had already been issued, and not one, as here, where only an application had been made. Third, it is largely based on a bulletin issued by the Florida Insurance Commissioner in 1972, that neither party has been able to locate. That bulletin, however, is quoted by the appellate court and contains language to the effect that the bulletin would "in no way interfere with the company's right to underwrite the insurance according to the normal procedures." We conclude, therefore, that
 
 Hairiott
 
 is inapplicable.